875 F.2d 315
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Eugene V. KLEIN, d/b/a Del Rayo Racing Stable, Plaintiff-Appellee,
v.
PEPSICO, INC.; Defendant-Appellant,
Universal Jet Sales, Inc., Defendant-Appellee.
 No. 88-3606.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 11, 1989.
Decided: May 16, 1989.
 
 Arthur S. Friedman (Peter N. Wang, Friedman, Wang & Bleiberg, P.C.; E. Milton Farley, III, Hunton & Williams; Craig C. Reilly, Murphy, McGettigan & West; James F. Burnett, Potter Anderson & Corroon, on brief), for appellant.
 Douglas Lee Fleming, Jr. (Robert E. Sevila, Hanes, Sevila, Saunders & McCahill; David N. Webster, Jeffrey D. Robinson, Nussbaum, Owen & Webster, on brief), for appellee.
 Before ERVIN, Chief Judge, and JAMES DICKSON PHILLIPS and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 The controversy underlying this appeal involved a contract for the sale by PepsiCo, Inc., of a Gulfstream G-II 170 jet airplane to Universal Jet Sales, Inc. ("UJS") for resale to Eugene V. Klein. For reasons not germane to this appeal, PepsiCo refused to sell its corporate jet, thus purposefully breaching the contract. Klein sued PepsiCo and UJS as a third-party beneficiary to the PepsiCo-UJS contract, and UJS filed a cross-claim against PepsiCo.
 
 
 2
 In a prior appeal, we affirmed the district court's finding that a contract was formed and that it was breached. See Klein v. PepsiCo, Inc., 845 F.2d 76 (4th Cir.1988). We reversed that part of its judgment that ordered specific performance and remanded for a trial on damages. On remand, the district court determined from the previously established record the cost of obtaining a comparable airplane, and fixed damages to Klein at $825,000 and to UJS at $150,000. It determined the market value of the jet plane at the time of breach of contract at $5,475,000 and arrived at the $825,000 figure by subtracting from the market value the contract price of $4,600,000 and the $150,000 commission to UJS and adding the $100,000 deposit made by Klein for the plane. The court entered judgment in those amounts, and PepsiCo appeals. We affirm.
 
 
 3
 The district court, in calculating the damages, applied Virginia Code Sec. 8.2-713, which provides in relevant part:
 
 
 4
 (1) Subject to the provisions of this title with respect to proof of market price (Sec. 8.2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this title (Sec. 8.2-715), but less expenses saved in consequence of the seller's breach.
 
 
 5
 The overall facts are stated in our previous opinion and need not be detailed here. The district court on remand determined that, although the contractual closing date for the sale was April 11, 1986, Klein through UJS attempted for four days thereafter to persuade PepsiCo to perform and did not receive the latter's unequivocal refusal until April 15, 1986. The district court thus found April 15 to be the date of breach for the purpose of calculating damages. Citing Official Comment 1 to Virginia Code 8.2-713, the district court found that, in defining the market price at the time of breach, it should consider "as a yardstick" the market in which the buyer would have obtained cover had it attempted to do so. The district court found from the evidence that there was a rising market for G-II jet planes between April 15 and May 1 and compared three sales made during that period in arriving at the price Klein would have been required to meet had he attempted to cover. It found that one airplane, the G-II 156* (a nearly comparable plane determined to be $100,000 less valuable than the 170), had been offered to Klein for a price between 5.2 million and 5.3 million dollars; that another, the G-II 181, sold for 5.5 million dollars; and that a third, the G-II 196, sold for 5.7 million dollars. Averaging the value of the 156 and the average of the 181 and 196, the court found that the 170's market value on April 15 was $5,475,000.
 
 
 6
 On appeal, PepsiCo argues that the district court committed numerous errors. Principally, it contends that the court failed to comply with this court's mandate because it did not convene a new evidentiary trial and take additional evidence on the question of damages, and that it erred in finding that April 15 rather than April 10, when PepsiCo notified UJS of its refusal to sell, was the date of the breach of contract; in choosing the time during which it considered comparable sales; and in selecting the other aircraft which it used as comparables to determine the amount of damages. Finding that the district court committed no reversible error in these or other aspects of the trial on remand, we affirm.
 
 
 7
 AFFIRMED.
 
 
 
 *
 The number following G-II is the plane's serial number. The lower the serial number, the older the plane